# John Lewis et al.

## v.

## Jefferson W. Pratt.

In May, 1864, P. made false representations as to his pecuniary condition to S. & S., on the strength of which he effected at that time a purchase of goods from S. & S. on credit. This purchase was subsequently paid for in full. In Sept. and Oct. following, P. made further purchases of S. & S. without any fresh representations as to his circumstances. *Held:* that whether the credits given in Sept. and Oct. were to be regarded as influenced and induced by the representations made in May, was a question of fact to be determined upon all the circumstances of the case.

A writ of attachment in this action was issued out of the Dakota County District Court. The affidavit upon which the writ was allowed by the court commissioner of that county, was made by Thomas Lewis, one of the plaintiffs, and states among other things, that the defendant is indebted to the plaintiffs in the sum of $970 53 for goods sold and delivered between the third day of September and the seventh day of October, 1864; that in the spring of the year 1864, at the store of the plaintiffs, who are merchants doing business at La Crosse, Wisconsin, the defendant, as an inducement to the plaintiffs to sell goods to him on credit, represented to the plaintiffs, that he was doing business in his own name, and did not owe anything, and had one thousand dollars stock in trade; that the plaintiffs, relying entirely upon such representations of defendant, sold and delivered to him the goods, for the agreed price of which this action is brought. The deponent charges that all such representations are false, and

states that defendant was then indebted to one Solon W. Edson, in the sum of $1,100, as appears by a chattel mortgage, executed by defendant to said Edson, on the 28th day of September, 1864, and was also indebted to the firm of Webber, Williams & Fetch in the sum of $333 14, and that he did not then have one thousand dollars stock in trade. A motion by the defendant to set aside said writ of attachment upon the ground, 1st. that the affidavit upon which it was issued is insufficient; 2d, that said affidavit is untrue, was made upon the papers in the case and his own affidavit, in which he denies that in the spring of 1864, or at any other time, and as an inducement for the plaintiffs to sell the defendant goods on credit, he represented to the plaintiffs that he did not owe anything, or that he had one thousand dollars stock in trade, and denies that he did not have one thousand dollars stock in trade at that time, and states among other things, that he never at any time had any conversation whatever with Thomas Lewis in relation to the said matters; that all the conversation he had with either of the plaintiffs in relation to such matters, was with John Lewis, and that he stated nothing to him except what was true; that the mortgage referred to in the affidavit of Thomas Lewis, is founded upon an adequate consideration, and was given in good faith. The motion came on to be heard at a general term of said court, held in January, 1865. Upon the hearing, the plaintiff, in support of the attachment, produced and read two supplemental affidavits, one by each of the plaintiffs. The affidavit made by Thomas Lewis, among other things stated that the defendant did make the representations mentioned in the affidavit of Thomas Lewis, that they were made to him in May, 1864; that defendant was then purchasing goods of plaintiffs, and asked for credit; that he replied to defendant, that he knew nothing of his circumstances, standing or responsibility, and before he could determine whether they would sell him goods on credit, defendant must give a true statement of his property, debts

Lewis et al. v. Pratt.

and circumstances; that deponent would take down his statements, and if they sold him any goods on credit, they would do so on the strength and faith of such statements; that the representations aforesaid were then made by defendant in response to questions put to him by deponent, and were reduced to writing in his presence; that relying entirely upon the truth of such representations, they sold and delivered to defendant goods to the amount of $429 96, receiving one-third cash, and giving credit for the balance; that on the third day of September, 1864, the plaintiffs, relying entirely upon such representations, sold and delivered to defendant on the same terms goods amounting to $1,004 33, and on the 7th day of October, 1864, goods amounting to $496; that defendant has paid the plaintiffs in all the sum of $959 96. Said affidavit further states that said representations so made by defendant were false and fraudulent, and specifies wherein they were false.

The court granted the motion upon the ground that the goods purchased at the time the representations were made had been paid for, and although the plaintiffs relied upon such representations in making the subsequent sales, yet that fact would not prove that the goods subsequently purchased by defendant were purchased on the faith of such representations, unless so stated and agreed upon between the parties. The plaintiffs appeal from the order granting the motion.

Roswell Judson, T. R. Huddleston, and Smith & Gilman, for appellants.

The court erred in vacating the attachment.

1st. The facts set forth in the affidavit upon which the attachment issued, were sufficient. Minn. Stat. p. 550 and 551.

The affidavit of defendant was not sufficient to set aside or vacate the attachment.

When the indebtedness is averred, and other facts alleged as the grounds of the attachment, as a conclusion of law, that point may be left to be determined at the trial. Supreme Ct. N. Y. sp. term, 4 Abbott's Pr. 396.

The court ought not to try the merits of the action on conflicting affidavits, nor set aside the attachment for every irregularity. *Bank of Commerce v. Rutland & Washington R. R. Co.*, 10 Howard p. 1; Supreme Ct. N. Y., *Niles v. Vanderzer*, 14 Howard Pr. 547; *Conklin & Conklin v. Dutcher*, 5th Howard Pr. 386.

2d. The court erred in vacating the attachment on the ground that the fraudulent representations were not made at the time of the purchase of the goods, but were made as alleged by plaintiffs previous to that time, and upon which they relied.

The responsibility of a party for false and fraudulent representations is not necessarily limited to the credit obtained thereby at or immediately subsequent to the time they were made.

When the representations were made in April, and the plaintiffs then and at various times afterwards until November, sold the party goods on credit, it is for the jury to decide whether the credits given during the summer and fall were induced by the representations. 3d Kernan N. Y., *Zabriskie et al. v. Smith*, 322; Hilliard on Torts, 2d Vol. 152; 17 Howard, 183.

3d. The question as to whether the debt was fraudulently contracted when alleged as the grounds of the attachment, and denied only by the defendant on a motion to vacate and dismiss, are questions of fact for a jury to decide, and the court erred in vacating the attachment. Ibid. 5th Howard Pr. R. 386; *Conklin & Conklin v. Dutcher*; *Bouchier v. Roullier*, 4 Abbott Pr. 396; *Bank of Commerce v. Rutland & Washington R. R. Co.*, 10 Howard Pr. 1, affirmed September, 1854, on appeal.

Lewis et al. v. Pratt.

S. Smith, for respondent.

The court did not err in vacating and setting aside the warrant of attachment in this action.

The matters stated in the affidavit were wholly insufficient to have authorized the issuing of the writ—an affidavit to obtain a warrant of attachment must make out a clear *prima facie* case, upon legal proof such as would be received as evidence in the ordinary course of judicial proceedings—hearsay or belief are insufficient. See *Pirese v. Smith*, 1 Minn. R. 83, 84; *Curtis v. Moore*, 3d Minn. R. 29 ; *Hinds v. Fayebank*, 9 Minn. R. 68 ; *Smith v. Luce*, 14 Wind. 237, 239.

There is no evidence of fraud in contracting the debt. It appears from the affidavit that the goods, the price of which they seek to recover, were purchased in the months of September and October, 1864, and that there was nothing said at the time in reference to the pecuniary ability of defendant.

That the only representations which they claim the defendant ever made to the plaintiffs in relation to his business or pecuniary ability, were on or about the 9th of May, 1864, at which time he purchased a bill of goods amounting to $496, which he paid for as agreed.

Fraud is never to be presumed—it must be proved. See Will'd Equity, 148.

All the material facts set forth in the affidavit are controverted by the affidavit of the defendant.

The supplemental affidavits of the plaintiff are to be disregarded except so far as they tend to disprove the matters set forth in the defendant's counter affidavit.

*By the Court*—Berry, J.—The supplemental affidavits of the appellants appear to have been received by the court below without objection, and as the statute authorizes the plaintiff to oppose the affidavit of the defendant used on a motion to dissolve an attachment by affidavits, or other evi-

dence, we shall consider the questions before us upon all the papers used upon the hearing below, without regard to the point made that the supplemental affidavits were competent only for the purpose of disproving the affidavit made by the defendant. Whatever there is in the point should have been urged against the reception of the affidavits by the court below. We do not understand the District Judge to entertain or express any doubt as to the fact that representations of his business circumstances were made by the respondent, in May, substantially as set out in the affidavits. It appears from these affidavits, that the respondent then represented among other things, that he was out of debt. That this was not the fact, is shown by the affidavit of the respondent himself.

The only serious question in this case is, whether false representations made in May, in regard to his pecuniary ability, by which the respondent effected a purchase on credit of the appellants, which purchase was subsequently paid for in full, could, without any further communication between the parties in reference to the respondent's circumstances, be kept alive and carried along, as it were, so that the wrong impressions created could be treated as operating upon and inducing subsequent credits in September and October following. We extract the following paragraphs from the decision of the judge below : "The representations charged to have been made were made in May, 1864, and it appears from said affidavit, that the debt then contracted was paid, and that the goods for which this action is brought were purchased in September after, and that the plaintiffs relied upon the representations made in May previous. We are of opinion that that fact would not prove that the goods were purchased on the faith of such representations, unless so stated and agreed between the parties that on the faith of these representations all subsequent purchases were to be made." We understand this to be a conclusion of law, and we think it is erroneous. An analogous question arose in *Zabriskie v. Smith*, 3 Kernan, 322. There

Lewis et al. v. Pratt.

the action was brought for false representations made by the defendant in April, as to the solvency and pecuniary standing of a third party, upon the faith of which the plaintiffs sold to the third party goods in April, and at divers times down to the eleventh day of November following on credit, though no further representations were made after April. Denio, J., in delivering the opinion of the court, says: "It would be manifestly unreasonable to limit the defendant's liability strictly to the very time of making the recommendation, for it would have been as likely to operate upon the plaintiff's mind at any time during the same season, and within a few weeks or months, as at the time when it was given. Whether according to the common usage of men of business, a fresh inquiry would be likely to be made at a time not more remote than that of the last purchase in this case, presented a question for the exercise of the good sense of the jury, &c." See also 2 Hilliard on Torts, 152. The case before us is stronger than the case of *Zabriskie v. Smith*, because here the time which elapsed between the representations and the credit was shorter, and perhaps for the further reason, that here the representations were made by the defendant himself, for his own personal benefit.

We think there is good sense, justified by daily experience, in the doctrine enunciated in *Zabriskie v. Smith*. Where one man induces another to deal with him and to give him credit by false representations as to his business condition, and when the credit is based entirely (as in this case) on such representations, and would not have been given without them, and shortly afterwards further credits are given though without fresh representations, it would naturally follow in the absence of any thing to the contrary, that the subsequent credits might be and probably were influenced by the information obtained from the party himself in the first instance. Under such circumstances the course of dealing has its origin in fraud and deceit, and parties ought to be held responsible

for the natural and usual consequences of their own wrong as business is ordinarily transacted. The court below having erroneously, as we think, come to the conclusion that the false representations made in May, could not, under any circumstances, affect or influence the purchases made and credits given in September and October, unless it was specially agreed that these purchases should be made on the faith of such representations, of course could give no effect to the *facts* contained in the affidavits; that is to say, the decision of the court was based on a proposition of law which we hold to be untenable, and not upon the *facts* upon which the attachment rested when tried and weighed by what we regard as the law of the case. This result makes it necessary for us to determine whether upon the facts appearing, the motion to dissolve should have been granted. In the first place, we think that the original affidavit upon which the attachment issued was sufficient to make out a *prima facie* case of fraud, upon which the court commissioner was authorized to allow the attachment, and that the counter affidavit of the defendant did not meet the statements of the original affidavit. Of course the action of the commissioner should not have been reversed without some good reason.

In the second place, when we take into account all the affidavits used upon the hearing below, a still stronger, and to us quite satisfactory case, is made out in support of the attachment. Without entering into particulars, it is quite apparent that the debt was fraudulently contracted, and the other requirements of the statute in regard to the allowance of attachments seem to be complied with.

The order vacating and dissolving the attachment is accordingly reversed.